W. C. CLELAND, plaintiff in error, *vs.* JOHN LOW, defendant in error.

1. When the Court is asked to give a charge to the jury, inconsistent with the law and facts of the case, it is not error to refuse the charge.
2. A charge created upon her separate estate, by a married woman, which may be enforced in equity, is a sufficient consideration to support a personal contract.
3. A verdict well founded in law and in fact will not be disturbed.

Action on a due bill, in Cobb Superior Court. Tried before Judge RICE, at September Term, 1860.

This action was brought by John Low against Williamina C. Cleland to recover the amount of a due bill given by defendant to plaintiff, and dated the 4th of May, 1852, for $1,250 00.

On the trial of the case, the plaintiff introduced the due bill sued on, and rested his case.

The defendant then read the depositions of her brother, Thomas J. Waters, who testified, that in the year 1851 the plaintiff endeavored to induce him to endorse for defendant in the matter of this debt, saying, that if witness would do so he would indulge defendant for twenty years; that plaintiff also stated, that defendant ought not to pay the debt, for that it was a debt contracted by Dr. James Cleland, the husband of defendant, in his life time, for the rent of a house and a wharf lot in the city of Savannah. The witness also testified that Dr. James Cleland was dead, and was insolvent

Cleland *vs.* Low.

at the time of his death, and for several years before that time.

The plaintiff replied to this testimony by introducing the depositions of James McIntyre, William M. Leigh, H. Knapp and John E. Ward, by whom it was shown that Dr. James Cleland and family occupied a house and lot in the city of Savannah, on Broughton street, belonging to the plaintiff, and which was worth, for rent, from $350 00 to $450 00 per annum; that Dr. Cleland was insolvent at and before his death, and that defendant had a separate estate, and made her own contracts. Two of the witnesses said that defendant continued to occupy the house and premises after the death of Dr. Cleland.

Plaintiff also read in evidence a note written by the late R. M. Charlton, Esq., and signed by the defendant, of which the following is a copy, to-wit:

"To Captain JOHN LOW:

"*Dear Sir*—As I am indebted to you in the sum of $675 00 for house rent, which you permitted me to occupy, at my request and upon the assurance that you should be paid out of my separate estate, I hereby deliver to you a negro man, Richard, to *be retained by you until, out of the* hire and services of said slave, you shall be paid in full the above demand. It being understood by you, however, that I have only power over the services of said slave during my life.           "Yours respectfully,

                                      "W. CLELAND.
"*August 4th*, 1848."

In behalf of defendant, it was positively testified, by members of defendant's family, that she did not occupy plaintiff's house a single day after Dr. Cleland's death.

Counsel for defendant requested the presiding Judge to charge the jury: "that if in 1848 Mrs. Cleland owed Low the sum of $675 00, or any other sum of money, and that she turned over to Low a negro man, in which she owned a life-estate, to be retained by Low until out of the hire and

services of the negro said sum should be paid, that was a settlement of that debt, unless the evidence showed a change of the contract, and that the giving of a due bill after that is not of itself sufficient evidence of a change in such contract."

The Court declined to give the charge, and defendant excepted.

The jury found for the plaintiff the amount of the due bill, with interest and cost.

Counsel for defendant then moved for a new trial, on the grounds:

1st. Because the verdict is contrary to law, contrary to the evidence, and strongly and decidedly against the weight of the evidence.

2d. Because the Court erred in refusing to give the charge to the jury as requested, and as hereinbefore set forth.

The Court refused the new trial, and error is assigned in such refusal.

IRWIN & LESTER, for plaintiff in error.

A. J. HANSELL, for defendant in error.

*By the Court.*—JENKINS, J., delivering the opinion.

The plaintiff in error moved the Court below for a new trial on two grounds, and excepts to the judgment refusing the motion on both grounds.

I shall consider, first, that which assigns error in the refusal of the Court to charge as requested.

1. Counsel requested the Court to charge, that the delivery of the slave by the defendant, and the reception of him by plaintiff, on the terms set forth in defendant's note accompanying the slave, was a settlement of the debt mentioned in that note, unless the evidence showed a change of the contract, and that the subsequent giving of a due bill including that indebtedness, is not sufficient evidence of a change in the contract. This request assumes that the delivery of the slave Richard, under the terms stated in defendant's note of

the 4th August, 1848, was a payment of all their existing indebtedness. We do not so regard it. It was more in the nature of a collateral security. It was an appropriation of the hire of that slave to the payment of the debt until paid. The evidence shows clearly enough that a portion of the sum then due, was afterwards included in the due bill now sued upon. This was the act of the parties, and is a safer reliance than any inferences third persons may draw from the note itself, though we think the note and the due bill entirely consistent, the one with the other.

We think the Court committed no error in refusing to give the charge.

The second ground was, that the verdict of the jury is contrary to law, contrary to evidence, and strongly and decidedly against the weight of evidence. The defendant, at the time the debt, liquidated by the due bill sued on, was contracted, was a *feme covert*, having a separate estate under her immediate control, the income of which she received and disbursed. She was accustomed to make contracts for herself. Her husband was insolvent. The note to plaintiff, dated 4th August, 1848, was written during the life of her husband. The due bill was given after his death, when she was *sui juris*. Her defence here is, that the note is without consideration. It is not denied that the due bill was given for the rent of the tenement referred to in the note of August, 1848, but it is said that at the time of the renting and occupancy of the house she could make no contract that would bind her separate estate, and that therefore there was no consideration for the due bill. The instrument creating this separate estate is not before us. It is contended on the one hand that a *feme covert* cannot bind her separate estate unless the instrument creating it expressly authorizes her to do so; on the other, it is insisted that she may do so, unless expressly restrained by the instrument creating it. Thus each party seeks to throw upon the other the *onus* of showing the provisions of that instrument. Here I remark, first, that the evidence discloses that it was a marriage settlement, securing to the defendant a separate property; secondly, that

Cleland *vs.* Low.

the inquiry is not *directly* whether this contract binds the *corpus* of the separate estate, or only the income; or whether both are free from its obligation. The question is, whether a contract made by the defendant, whilst a *feme covert*, having a separate property, is a sufficient consideration to support the contract now in litigation, made after she had become a *feme sole?* Should the attempt ever be made to enforce this contract, by final process, against this separate property, the rights of others may become involved, and it may be necessary to investigate carefully the nature and incidents of this separate estate; but this question we are not now called upon to adjudicate. That we are now considering respects only a personal liability, the sufficiency of a specified consideration, to support a personal contract, and thus the liability of the separate estate to a contract made during coverture, comes collaterally under review.

2. What then, under the facts of this case, are the legal presumptions? "If a debt of the wife is contracted *after marriage*, it is *prima facie* chargeable on her separate estate." 1 Parsons, 4th ed., 306 b, citing Greenough vs. Wigginton, 2 Green., 435, and Gardner vs. Gardner, 7 Paige, 112. A married woman's "separate estate will, in equity, be held liable for all the debts, charges and incumbrances, and other engagements, which she does expressly or by implication, charge thereon." 2d Story's Eq., sec. 1399, citing Hulme vs. Tenant, 1 Bro., Ch. R., 16, 20. Brown vs. Little, 14 Vesey 302. 2 Roper on Husband and Wife, ch. 21, sec. 3. Peacock vs. Monk, 2d Vesey, 190. Grigby vs. Cox, 1 Ves., 517. Greatly vs. Nohl, 3 Mad. R., 94. The general rule recognized by these authorities is, that the separate property of a married woman is *prima facie* chargeable with her debts contracted during coverture, and if she does so charge it expressly or by implication, the charge will be enforced in equity. It cannot be doubted that a charge upon property, which may be enforced in equity, is a sufficient consideration to support a personal contract. So we hold the law of the case.

Now as to the facts upon the main points, there is a con-

Cleland *vs.* Low.

flict in the testimony, and strangely enough, each party draws from the other directly or indirectly the conflicting statements. The defendant in error is made to say that the primary contract of rent was not that of plaintiff in error, but of her husband, and that she ought not to pay it. The plaintiff in error is made to say that the primary contract was hers, and that the defendant in error was assured that he "should *be paid out of her separate estate.*" There is, however, this difference in the pieces of conflicting evidence. The defendant in error speaks through a third person, detailing from memory a conversation several years after it occurred. The plaintiff in error speaks, by a note in writing, drawn by an able adviser, and signed by herself, whilst these events were transpiring, she being then in the occupancy of the premises. On this latter evidence the jury very properly relied. The plaintiff in error, then, while covert, had a separate estate which she controlled, disposing of the income as she pleased. It was her custom to make contracts. This contract, (for rent,) made during coverture, she expressly charged upon her separate estate, and partially discharged by appropriating to it a portion of the income. The presumption is, that she had authority to charge her separate estate with her contracts. There is no reasonable doubt as to her power to charge her contracts upon the income of that property during her life. She did actually for a time appropriate the income from a portion of it to the payment of the contract. Subsequently, having become *sui juris*, she substituted the personal contract now in litigation. We are fully satisfied that it is supported by a sufficient consideration, and that the verdict of the jury is well founded in law and in fact.

Let the judgment be affirmed.